## COGDELL v. SOUTHERN RAILWAY CO.

(Filed December 20, 1901.)

1. NEGLIGENCE—*Assumption of Risk—Acts (Private) 1897, Ch. 56—Master and Servant.*

Under Acts (Private) 1897, Ch. 56, an issue as to assumption of risk by an employee need not be submitted.

2. NEGLIGENCE—*Assumption of Risk—Acts (Private) 1897, Ch. 56.*

Acts (Private) 1897, Ch. 56, deprives railroad companies of the defense of assumption of risk, whether resting in contract, express or implied, and whether treated directly or under the doctrine of fellow-servant.

3. EVIDENCE—*Scintilla.*

Where there is more than a scintilla of evidence, it should be submitted to the jury.

4. INSTRUCTIONS—*Judge—Evidence—Witnesses.*

The trial judge should not single out one or more witnesses, as the effect might be to give undue credit to such testimony.

Cook, J., dissenting.

ACTION by Chas. D. Cogdell against the Southern Railway Company, heard by Judge *Frederick Moore* and a jury, at May Term, 1901, of the Superior Court of CUMBERLAND County.

This is an action for damages for personal injuries to the plaintiff, caused by the alleged negligence of the defendant. The material allegations of the complaint are as follows:

"2. That the plaintiff was, at the date hereinafter mentioned, and for some time previous thereto, an employee of the said defendant corporation, in the capacity of a fireman on one of the said defendant's engines, then operating at Winston-Salem, N. C.

"3. That on the 11th day of November, 1899, as it was his duty and daily custom as such employee, the plaintiff was working and performing his duties as fireman upon said engine.

"4. That while so working as fireman on said engine, it was his duty to shake the clinkers or cinders out of the grate, to clean the fires from time to time, as became necessary.

"5. That on the said date, while cleaning fires as aforesaid, plaintiff was thrown down violently against the boiler, falling with great force, by reason of the defective condition of the grate handle or shaker-bar rigging, which defective condition caused the lever to slip off while plaintiff, with his full weight and strength, was cleaning fires as aforesaid.

"6. That at the time aforesaid, the said defendant was, with gross carelessness and negligence, wilfully operating said engine in its defective condition, to the great danger of plaintiff.

"7. That in consequence of said defective condition of said machinery, which could and ought to have been kept in good condition, the plaintiff, when thrown down violently as aforesaid, was very painfully and dangerously and permanently injured."

There was evidence tending to sustain the plaintiff's contention.

The defendant asked that the following issues be submitted to the jury:

"I. Was the plaintiff injured by the negligence of the defendant in the manner alleged in the complaint?

"II. Did the plaintiff, by his own negligence, contribute to the injury complained of?

"III. Did the plaintiff assume the risk of any defect in the shaker-bar or grate handle?

"IV. What damages, if any, has the plaintiff sustained?"

The Court submitted the first, second and fourth issues

as requested, but refused to submit the third issue, and the defendant excepted.

The issues submitted were found in favor of the plaintiff, and from judgment thereon the defendant appealed.

*N. A. Sinclair,* for the plaintiff.
*F. H. Busbee,* for the defendant.

DOUGLAS, J., after stating the facts.   In view of the act of February 23, 1897 (Private Laws, Chap. 56), the Court properly refused to submit the third issue tendered by defendant.   This point has been so fully considered in the cases *Coley v. Railroad* and *Thomas v. Railroad,* both at this term, that further discussion seems unnecessary.   It may now be considered settled that the said act deprives all railroad companies operating in this State of the defense of assumption of risk, whether resting in contract, express or implied, and whether treated directly or under the doctrine of fellow servant.   It is further settled that the plaintiff is not guilty of contributory negligence in undertaking the performance of a dangerous work unless he performs it in a negligent manner, or unless the act itself is obviously so dangerous that, in its careful performance, the inherent probabilities of injury are greater than those of safety.   *Hinshaw v. R. Co.,* 118 N. C., 1047; *Coley v. Railroad* and *Thomas v. Railroad, supra.*

We see no error in the charge.   As there was more than a scintilla of evidence tending to prove the negligence of the defendant, the case could not have been taken from the jury. *Bank v. School Committee,* 121 N. C., 107; *Cable v. Railway Co.,* 122 N. C., 892; *Moore v. Street Ry. Co.,* 128 N. C., 455.   The Court properly refused to charge as to contributory negligence on the first issue, especially as he substantially embodied that part of the prayer in his instructions upon the second issue.

The defendant requested the Court to charge: "If the jury believe from the testimony of defendant's witnesses as to the condition of the grate-bar, or the testimony of plaintiff's witness Clark, that the grate-bar was worn 'the least bit in the world,' this would not be sufficient evidence of a defective appliance to go to the jury, and they should find the first issue 'No'" The Court refused to give the instruction as requested, but gave it in the following modified form: "If the jury find from the testimony that the condition of the grate-bar was good and not worn, or that the grate-bar was worn only 'the least bit in the world,' this would not be sufficient evidence of a defective appliance to go to the jury, and they should find the first issue 'No.'" Defendant excepted to the modification. His Honor was correct in modifying the prayer, because its effect would have been, or might have been, to give undue credit to the defendant's witnesses as well as the witness Clark, whose testimony was by no means favorable to the plaintiff. *Jackson v. Commissioners,* 76 N. C., 282; *Young v. Steamboat Co.,* 64 N. C., 399; *Weisenfield v. McLean,* 96 N. C., 248.

We are inclined to think that it would have been error if the instruction had been given as asked, as it tended to discredit the plaintiff, who had testified in his own behalf; but in any event the defendant had no right to demand that his Honor should single out by name any one witness from amongst others who had testified to the same matter.

Among other prayers, some of which were given, the defendant asked for the following instruction: "A railroad is not an insurer of the safety of its employees, nor is it required to have every appliance in perfect condition at all times. If its machinery is reasonably suitable for the purpose for which it is designed, if used with ordinary care, the railroad can not be found negligent because the corners of a grate-bar are worn 'the least bit in the world,' provided

that this would not cause the accident if due care should be observed by the fireman using it." The Court gave this instruction as requested; and cahrged the jury upon the second issue, among other things, as follows: "If you find from the evidence that the grate-bar was in a dangerous condition on account of two of its corners having worn until they were round, that the plaintiff knew of its defective and dangerous condition, and that with knowledge of such defective and dangerous condition he voluntarily remained in the service of defendant and continued to use such grate-bar, he assumed the risk incident to the use of such defective grate-bar, and you should answer the second issue 'Yes.' If you find from the evidence that the plaintiff did not use that degree of care and caution in attaching the handle to the grate-bar which a prudent man would have used in so attaching it, and that such want of care caused or contributed to the injury of which the plaintiff complains, then, whether the grate-bar was worn or not, you should answer the second issue 'Yes.' "

These instructions, with others, went fully as far as the defendant had a right to demand, and, in fact, if the point were before us, we might seriously question its correctness as being too favorable to the defendant as to the assumption of risk under the act of 1897.

This case is peculiarly one whose determination comes within the province of the jury, as the testimony was conflicting upon material points. Even if the facts were undisputed, it would be extremely difficult for a Court to say as matter of *law* what degree of wear would render a piece of machinery, not in common use, so far dangerous as to imply negligence on the part of the defendant, or to deter a man of ordinary prudence from undertaking to use it.

Considering the testimony and the charge, the jury might well have found for the defendant, if they had given to its witnesses the same degree of credibility that they appear to

have given to the plaintiff. But they have found otherwise, and we can not say that they are wrong. The credibility of a witness is a matter peculiarly for the jury, and depends not only upon his desire to tell the truth, but also, and sometimes even to a greater extent, upon his insensible bias, his intelligence, his means of knowledge and powers of observation. The judgment is

Affirmed.

Cook, J., dissents.